CULPEPPER, Judge.
The plaintiffs carried fire insurance on the dwelling of Mr. Hardy Ellis, which was damaged by a gas explosion and fire. Under their policies, plaintiffs paid the sum of $7,406.05 to Mr. Ellis. Then they brought this suit on a subrogation claim, alleging that the fire was caused by the combined negligence of the defendants/ Flenniken Construction Company, insured by Argonaut Insurance Company, and United Gas Corporation, insured by Continental Casualty Company. After a trial on the merits, the district judge held that the fire was caused solely by the negligence of United Gas Corporation. From this judgment, United Gas Corporation and its insurer have appealed.
There is no dispute as to the amount of the claim. The issues on appeal are factual. The first question is whether the defendant, United Gas Corporation, was negligent in failing to lower its gas service line, to the Ellis residence, to a safe depth of at least 6 inches to 1 foot below the bottom of the proposed concrete pavement of the street, after being requested by Flenniken Construction Company, which was doing the paving, to do so. As regards Flenniken Construction Company, the question is whether it was negligent in damaging the gas line with its grader blade during construction of the street
As is pointed out by the trial judge, in his very excellent written opinion, there is no question but that the explosion and fire were caused by gas escaping from the damaged line. It is also clear that the line was damaged when struck by the blade of Flenniken Construction Company’s grader, as it was cutting the road bed in front of the Ellis residence.
It is our opinion that the trial judge has correctly stated both the law and the facts in the following portion of his opinion which we adopt as our own:
“In the Court’s opinion this case must be decided on the basis of the jurisprudence concerning the relative rights of two users of a city’s right-of-way. In Southern Bell Telephone & Telegraph Company v. Williams Brothers, Inc., 141 So. 835, the Orleans Court of Appeal said, ‘ * * * the right of a city to build a sewer is at least equal to that of a gas company to maintain its pipes in the street, and that assuming that their rights are equal, each is bound so to exercise his right as not unnecessarily, negligently, or unreasonably to interfere with the other’s right * * * ’. Further quoting, ‘ * * * where the interests of the citizens require it, another corporation may be given rights which necessitate interference with the previously constructed lines of the prior user, and that, in such case, the duty of the second user is to take all reasonable steps to ascertain the location of such existing facilities and to then take all reasonable care to avoid injuring them.
*773 “ ‘In other words, the second user is liable only for negligence in failing to ascertain the existence and location of other lines or for negligence in failing to avoid them after having learned of their existence.
“ 'Of course, it follows that the prior user must furnish to the second user all available information as to locations, and this information must be reasonably accurate.’
“Now in the present case the United Gas Corporation occupied the position of the prior user. The Flen-nikcn Construction Company, under a contract with the Town of West Lake to pave its street, occupied the position of the second user. Certainly, Flenni-ken was obliged to take reasonable steps to ascertain the existence and location of United’s lines before proceeding with its paving. By the same token, United must have furnished Flenni-ken all available information it had as to the location of its gas lines, and such information must have been reasonably accurate.
“Now the testimony on this subject was that United received notice from Flenniken that the paving project was to be carried on. United’s engineer checked the grade of the proposed street, and apparently checked the level of its own lines, because he determined that four of these lines in the vicinity of the Ellis house, including the one leading to Mr. Ellis’s premises, had to be lowered before the paving began. Mr. Waterfield, the engineer, testified, as I recall, that they generally lower the lines anywhere from six inches to one foot below the grade of the street —that is, the bottom of the proposed paving. Mr. Van Gossen, who was the construction foreman in the field for United, testified that this was done. However, his testimony in this respect was contradicted, not only by other evidence, but by himself, and he finally concluded that it would be best to determine whether the service line in front of Mr. Ellis’s house had been lowered from the testimony of other United Gas witnesses. The two men working under Mr. Van Gossen in the field had no definite recollection one way or the other that this particular line had been lowered, and it is evident from the proof on the subject that if the line had ever been lowered, it had not been lowered to a depth of from six to twelve inches under the proposed grade, which the United Gas Corporation people testified was customarily done.
“In spite of this, Mr. Van Gossen acknowledged that he informed Flenniken Construction Company it was safe for them to proceed with the work as the line had been lowered, and, of course, under the circumstances Flenniken did proceed. Since the line-in front of Mr. Ellis’s house was located at a level that was certainly not more'than three or four inches below the proposed grade of the paving, and was probably less, the Court concludes that United Gas Corporation was negligent in failing to furnish accurate information concerning the location of its line.
“United’s witnesses, as well as Flenni-ken’s witnesses, acknowledged that in the grader’s travel the level of the blade might vary from two, three, or possibly, four inches when the machine hits soft spots. Under the circumstances, United Gas Corporation should have known that its line would have to be at least six inches below the proposed grade in order for it to be safe. However, as I have said, it is obvious that the line was not lowered that much below the proposed grade, and it is also obvious that United’s construction superintendent advised Flenniken to proceed because the lines were safely located. I do not believe that Flenniken Construe *774 tion Company was negligent in proceeding under these circumstances.”
For the reasons assigned, the judgment appealed is affirmed. All costs of this appeal are assessed against the defendants appellants.
Affirmed.